830

# COCHRAN et al. v. FLORIDA NAT. BLDG. CORPORATION.

## No. 562–M–Civ.

District Court, S. D. Florida, Miami Division.

July 8, 1942.

Shepard Broad, of Miami Beach, Fla., for plaintiff.

Emett C. Choate, of Miami, Fla., and John W. Harrell, of Jacksonville, Fla., for defendant.

WALLER, District Judge.

This is an action brought by the operator of a passenger elevator and a janitor against the owner of an office building wherein the plaintiffs allege that they are entitled to be paid the compensation provided for employees engaged in interstate commerce under the Fair Labor Standards Act, 29 U.S.C.A. 206, 207 et seq. It is stipulated that the defendant is not engaged in interstate commerce, or in the production of goods for commerce, in its own behalf. It is stipulated that no occupant of said building, as a tenant or otherwise, is engaged in the production of goods for commerce; that is to say, no goods are manufactured in said building. It is stipulated that the building is occupied by doctors, dentists, insurance representatives, brokers, contractors, real estate companies and various other types of businesses and professions. A substantial part of the business of a considerable portion of the tenants of said building is connected with interstate transactions, but no goods are manufactured and no tangible, physical merchandise is sold, shipped, or delivered in interstate commerce. Transactions are carried on between the home offices of insurance companies and their representatives or brokers. Bond sales and the like are consummated with parties residing in other states. Numerous transactions of this character are carried on by various tenants in the building. It is conceded, for the purpose of this controversy, but not here decided, that a large number of the tenants in said building are engaged in interstate commerce as distinguished from the production of goods for commerce and as distinguished from the shipment, sale, or delivery of what is commonly characterized as "merchandise" in interstate commerce.

The plaintiffs are employed by the defendant owner of the building. Their services are rendered to the tenants whose business is solely intrastate as well as to those whose business includes interstate transactions. The tenants handle no goods, wares, or merchandise in any substantial quantity. Doubtless the elevator may transport messages to and from tenants as well as packages coming from outside the state or going outside the state. The elevator likewise carries tenants and customers, some part of whose business may be substantially interstate.

The janitor performs the usual duties of keeping offices clean without regard to whether the tenants are engaged in intra- or inter-state business. The quality and quantity of his services are in no wise affected by state lines.

The services of these two employees are rendered for the building owner without regard to the character of the business engaged in by the tenant. No type of service is rendered by the plaintiffs to the tenant engaged in interstate commerce which dif-

fers in any substantial manner from that rendered to tenants engaged solely in intrastate commerce.

The case comes on to be heard on motion by all parties for summary judgment based upon the pleadings and stipulations of the parties. There is no question of fact in issue. The question presented is whether or not the plaintiffs are within the provisions of the Fair Labor Standards Act under the circumstances hereinbefore set out.

The plaintiffs assert that the cases of A. B. Kirschbaum v. Walling, Administrator, and Arsenal Building Corporation et al. v. Walling Administrator, 62 S.Ct. 1116, 1117, 86 L.Ed. ——, decided by the Supreme Court on June 1, 1942, require a holding that the parties are under the Fair Labor Standards Act so as to require compliance with the wages and hours provisions of the Act for those engaged in interstate commerce.

The Court is of the opinion that the Kirschbaum case, supra, is not controlling. In the Kirschbaum case the employees were "engaged in the operation and maintenance of a loft building in which large quantities of goods for interstate commerce are produced". The building there involved was not the ordinary office building in which no goods were produced for interstate commerce as in the instant case. The Kirschbaum case is supported by reason and by the wording of the statute in question. In that case employees actually handled the goods which were produced in the building and shipped in interstate commerce. Some of the employees produced heat, hot water, and steam necessary to the manufacturing operations. They furnished the tenants with light and power. They ran freight elevators, which start and finish the interstate journey of goods going from and coming to the tenants. They were engaged in a "process or occupation necessary to the production" of goods for commerce.

■ This Court committed itself to the conclusion many months ago in the case of Gerdert v. Certified Poultry & Egg Co., Inc., 38 F.Supp. 964, and in the case of Tucker v. Hitchcock, 44 F.Supp. 874, text 877, in which latter case the Court said:

" 'The Court definitely concludes that the Fair Labor Standards Act does not attempt to regulate local transactions which merely *affect* interstate commerce *except in the matter of production of goods for commerce* or the sale of goods to be shipped, sold, and delivered in commerce, or intended to be shipped, sold, or delivered in interstate commerce.' [Italics supplied.]

"I entertained the view that so far as a merchant is concerned he is not within the Act unless he is engaged directly in interstate commerce, or, that is, is engaged in the shipment or sale, directly or indirectly, of goods beyond the boundaries of his state, but I also still entertain the view that the term 'production of goods for commerce' is a broader term than 'engaged in interstate commerce', and that one may be producing goods for commerce who makes no sales extra-state. Unquestionably Congress has the power to regulate transactions which are purely local when isolated if such transactions adversely affect interstate commerce. It seems to the Court that the term 'engaged in the production of goods for commerce' might encompass purely local transactions which are the instrumentalities of or affect or burden interstate commerce."

It was pointed out in the Gerdert case the distinction between the Fair Labor Standards Act and other recent Federal Statutes which expressly undertook to regulate practices that adversely affect interstate commerce. The Circuit Court of Appeals for the Fifth Circuit, in Swift & Company v. Wilkerson, 124 F.2d 176, and Jax Beer Company v. Redfern, 124 F.2d 172, has announced that the Act had no application to matters that merely affected interstate commerce, but that Court apparently has not construed the phrase "production of goods for commerce" in relation to processes necessary to the production of goods. In Overstreet v. North Shore Corporation, 5 Cir., 128 F.2d 450, decided May 28, 1942, it was held that the owner of a toll road, which toll road was used as an instrumentality of interstate commerce by others, was not under the Fair Labor Standards Act in view of the fact that the owner of the toll road neither shipped nor sold nor produced anything in interstate commerce, and that it is essential not only that the employee be engaged in interstate commerce but that the employer must also be so engaged. This Court has likewise so held in the case of Johnson v. Filstow, Inc., 43 F.Supp. 930. In the latter case the Court undertook to point out some of the provisions in the statute relating to the employer which made that conclusion inescapable. Attention might also be called to the provision of the statute that exempts the retailing establishment, the greater part of whose sales is in in-

trastate commerce. This exemption to the employer indicates that the employer must also be engaged in interstate commerce, or in the production of goods for commerce, or in a process or occupation necessary to the production of goods. The Supreme Court, in the Kirschbaum case, supra, did not hold that the business in which the employer was engaged was immaterial. The rationale of its decision was that the owner of the building furnished, through its employees, essential services in the production of goods for commerce.

We do not have under consideration at present the case of the "production of goods for commerce". That phrase is susceptible of an interpretation which would include activities not embraced in the phrase "engaged in interstate commerce". In connection with production of goods the employer could be producing or manufacturing goods, none of which ever was shipped in interstate commerce, and yet be under the Act. He might be engaged in the manufacture of goods, all of which were sold locally but which later were shipped in interstate commerce,[1] or in the ordinary course of business were calculated to move in interstate commerce.[2] Goods produced for commerce are not interstate commerce, but the production of goods which in the ordinary course of business would be calculated to find their way into the stream of commerce is a thing that might adversely affect interstate commerce, and any necessary process in the production of goods for commerce or in their shipment, sale, or delivery might adversely affect interstate commerce. To the above extent it is believed by the Court that the Act does, in the matter of manufacture of goods, undertake to regulate businesses or practices that affect interstate commerce. It has heretofore been held by this Court,

and is its firm conviction, that the Fair Labor Standards Act does not attempt to regulate matters that merely affect that part of interstate commerce which is unconnected with manufacturing or the production of goods for commerce. The Act does not undertake to regulate matters that merely affect interstate commerce in the ordinary commercial or selling pursuits or in any respect other than in the manufacture of goods.

I do not find anything said in the Kirschbaum case, supra, out of harmony with the views herein expressed, because that case dealt with the production of goods for commerce, and that term is broad enough to include any essential instrumentalities in the production of goods. The Act itself includes "any process or occupation necessary to the production thereof".[3] It would be a far stretch of the imagination to say that an elevator operator or a janitor is necessary to the sale of insurance or the sale of bonds or the sale of stock, or in any selling enterprise of interstate commerce. The fact that the elevator operator might bring customers to the office to whom a sale might be made argues nothing, because such a sale would be a local transaction wholly without interstate character.

This Court some months ago had occasion to pass on this question in the case of Johnson v. Filstow, Inc., supra, and finds nothing in the decision of the Supreme Court in the Kirschbaum case inconsistent with the views therein announced.

It is, therefore, the opinion of the Court that the plaintiffs are not entitled to recover, and the motion of the defendant for a summary judgment is hereby granted.

Let an appropriate judgment be prepared and submitted.

---

[1] Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897.

[2] United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A. L.R. 1430.

[3] Sec. 203(j), 29 U.S.C.A.